UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JEANETTE H. WISEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:04-0946 |
| | ) | Judge Echols |
| | ) | |
| VANDERBILT UNIVERSITY and | ) | |
| KAREN C. WILLIAMS, individually, | ) | |
| and TONDA RICE, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court are Defendants Vanderbilt University, Karen C. Williams, and Tonda Rice's Motion for Summary Judgment (Docket Entry No. 11), Plaintiff Jeanette H. Wiseman's Response in Opposition (Docket Entry No. 31) and Defendants' Reply (Docket Entry No. 40) thereto. Also pending before the Court is Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 18), Defendants' Response (Docket Entry No. 27), and Plaintiff's Reply thereto (Docket Entry No. 41).

Additionally, Plaintiff has filed a Motion for Leave to File Supplemented Response to Defendants' Statement of Undisputed Facts and for Oral Argument (Docket Entry No. 43), to which Defendants have objected (Docket Entry No. 47). Finally, Defendants have filed a Motion to Strike Plaintiff's Supplemental Memorandum relating to the motions for summary judgment which had been filed. (Docket Entry No. 46).

1

## I.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE

This is an action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, in which Plaintiff Jeanette Wiseman ("Wiseman") alleges Defendants violated the FMLA by interfering with leave rights provided for in the FMLA. The alleged violations relate not only to Plaintiff's own medical conditions, but also to those of her son who has Attention Deficit Disorder ("ADD") and needs help in order to catch the school bus. Plaintiff also claims the Defendants discharged her in retaliation for opposing practices made unlawful by the ADA. Named as Defendants are her former employer, Vanderbilt University, and two Vanderbilt University employees, Karen C. Williams ("Williams") and Tonda Rice ("Rice").

### A.  Plaintiff's Work History And Performance

The facts[1] as they relate to Plaintiff's work history and performance at Vanderbilt are as follows. Plaintiff was an administrative employee in the Division of Pediatric Critical Care and Anesthesia (the "Division") at Defendant Vanderbilt ("Vanderbilt"). The head of the Division was Dr. Jayant Desphande ("Dr. Desphande") (Def. SOF ¶ 1.) The Manager of the Division was

---

[1] Local Rule 8(b)(7) requires that the parties submit with any motion for summary judgment, "a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." In this case, Plaintiff has submitted 36 such facts, while Defendants have submitted 174 such facts. (Docket Entry Nos. 28 & 32). Many of the facts deemed not in dispute are hotly contested by the Plaintiff. Others which appear not to be disputed are nevertheless disputed for hyper-technical reasons. In any event, this Court has endeavored to sift through the filings to find the relevant facts.

Defendant Tonda Rice ("Rice"),[2] who was Plaintiff's immediate supervisor. (Rice Aff. ¶ 1.)

Plaintiff began working as a Secretary in the Division in 1997, and was promoted to the classification of Office Assistant IV in December, 2000. (Def. SOF ¶¶ 3 & 6.) Initially, she was primarily responsible for providing clerical support to Drs. Brenda McClain and Benjamin Lee. (Id. ¶ 5.) When Dr. McClain left Vanderbilt, Plaintiff began working primarily for Dr. Deshpande. (Id.)

According to Dr. Deshpande, he began experiencing problems with Plaintiff's job performance in late 2001. Those problems included Plaintiff's purported inability to keep filing current, to complete dictation in a timely manner, to forward telephone messages in an efficient manner, and to consistently maintain his calendar. (Deshpande Aff. ¶ 4.) He voiced those concerns to Rice. (Id. & Rice Aff. ¶ 3.)

On February 14, 2002, Rice met with Plaintiff to discuss Plaintiff's performance. (Rice Aff. ¶ 4.) Following the meeting, Rice sent Plaintiff a memo outlining their discussion, and Plaintiff's agreement regarding how she would approach her tasks in the future. (Rice Aff. Ex. 2.) The memo also confirmed a follow-up meeting for March 1, 2002, to discuss Plaintiff's progress. (Id.)

---

[2]Rice's new title, effective September, 2004, is Clinical Administrator in the Department of Pediatrics. (Id.)

3

On March 13, 2002, Rice, along with Dr. Deshpande, met with Plaintiff to discuss her performance. Dr. Deshpande was of the view that Plaintiff did not adequately respond to the concerns which had been made to her about her performance. (Deshpande Aff. ¶ 5.) Specifically, Dr. Deshpande continued to experience delays in getting his dictation completed, had problems with his calendar being maintained, and problems with getting his filing completed in a timely fashion. (<u>Id</u>.)

Another bone of contention with Dr. Deshpande was the fact that Plaintiff's scheduled start time was 9:00 a.m.[3] Dr. Deshpande preferred that Plaintiff arrive at 8:00 a.m., or earlier, since he started his workday at 7:00 a.m. (<u>Id</u>.)

During the meeting, Dr. Deshpande outlined several specific goals that Plaintiff would have to meet if she were to continue working for him, including changing her start time to 8:00 a.m., maintaining his calendar in an accurate manner, and making a continuing effort to follow-up with either him or Rice regarding assigned tasks and ongoing projects. (<u>Id</u>.) The details of the meeting were set forth in a letter to the Plaintiff dated March 25, 2002. (<u>Id</u>., Ex. 2.)

Plaintiff inquired about possibly moving to another position in the Division and by letter dated March 20, 2002, Plaintiff

_____

[3]Plaintiff worked 9:00 a.m. until 5:30 p.m., with a half hour allotted for lunch. She was the only one in the Division who started work at 9:00 a.m. and that late start time began in 2001 as an accommodation to Plaintiff's personal schedule. (Wiseman Depo. at 27-28.)

4

informed Dr. Deshpande that she had accepted another position. (Deshpande Aff. ¶ 5, Ex. 3.) In her new position, Plaintiff became an Administrative Assistant for Drs. Julie Hudson and Neal Patel. (Wiseman 8/29/05 Decl. ¶ 8.)

Despite maintaining the 9:00 a.m. start time, Plaintiff continued to have problems getting to work on time. The incidents of tardiness exceeded the Vanderbilt Absenteeism and Tardiness Policy. (Rice Aff. ¶ 7.)

On April 30, 2002, Rice completed an annual performance appraisal for Plaintiff. Plaintiff was rated by Rice as generally satisfactory, although there were several problem areas relating to job performance. Plaintiff was rated below average on "File Maintenance" and "Maintaining Appointment Calendars and Schedules." (Id.)

Even though Plaintiff did not now work directly for Dr. Deshpande, he became aware that Plaintiff was still experiencing problems with her performance. on June 7, 2002, Plaintiff was placed on Written Performance Improvement Counseling ("W-PIC"), which is the second step in Vanderbilt's progressive discipline system. (Deshpande Aff. ¶ 6-7.) Plaintiff was given ninety days to improve her performance or risk further discipline. (Deshpande Aff. ¶ 7.) Among deficiencies noted in the W-PIC was Plaintiff's failure to archive files, continued tardiness, failure to complete tasks, errors in carrying out tasks, and failure to notify Rice when Plaintiff did not report for work. (Rice Aff. ¶ 10 & Ex. 7.)

5

Additionally, Plaintiff's schedule was changed to 8:00 a.m. until
4:30 p.m. (Id.)

Due to continuing perceived shortcomings, on September 12,
2002, Rice met with Plaintiff and gave her a letter notifying
Plaintiff she was being placed on Final Performance Improvement
Counseling (F-PIC). (Rice Aff. ¶ 14, Ex. 13.) The letter noted
that, since her W-PIC, Plaintiff had been tardy fourteen times,
eleven of which were not illness related.[4] The letter also set
forth expectations including that (1) Plaintiff consistently be at
work from 8:30 a.m. to 5:00 p.m.,[5] with a half hour for lunch; (2)
past filing be complete by September 30, 2002; (3) tasks be
finished by the given due date; (4) a report on the "Declining
Balance Debit Card" be prepared by noon each Friday; (5)
notification be made to Rice whenever Plaintiff was going to be
tardy or absent; (6) Rice be apprized if an emergency arose and
Plaintiff was going to be out of the office; and (7) when calling
in sick, Plaintiff contact Rice personally or leave a voice mail so
that the two could speak about Plaintiff being absent. (Id.)

---

[4]On her time cards, Plaintiff listed various reasons for her
being late, including traffic on the interstate, having to wait for
the shuttle bus, going to court with her son, having the brakes
fixed on her car, and attending a meeting at her son's schools.
(Id.). None of the excuses were for her son's medical condition or
for having to make sure her son got on the school bus in the
morning. Plaintiff asserts that she did not list such events as a
reason for being late because both Dr. Deshpande and Rice knew
Plaintiff's son required extra time in the morning to prepare for
school. (Wiseman 8/26/05 Decl. ¶ 13).

[5]Rice allowed Plaintiff's start time to be moved back from
8:00 a.m. to 8:30 a.m at the end of August 2002. (Rice Aff. ¶ 10.)

6

"Because of the tardiness and performance issues," Plaintiff was placed on F-PIC for six months and informed that any further problems which arose during this period could result in termination. (Id.) When Plaintiff received the F-PIC, she knew her job was in jeopardy. (Def. SOF ¶ 83.) Nevertheless, after being placed on the F-PIC, Plaintiff was tardy on September 17 and 18, and October 2, 2002.[6] On September 26, 2002, Rice placed a note in Plaintiff's personnel file regarding the incidents of tardiness Plaintiff accumulated. (Rice Aff. Ex. 22.)

Plaintiff filed a grievance under the Vanderbilt staff grievance procedure over the F-PIC asking that the F-PIC be withdrawn so that she could look for another job at Vanderbilt and that her starting time be moved back to 9:00 a.m., instead of 8:30 a.m. (Id. ¶ 84, 86-87.) Donald Pruitt ("Pruitt"), Administrative Officer of the Department of Pediatrics, met with Rice and Dr. Deshpande to discuss the grievance on September 24, 2002. (Id. ¶ 85.) Dr. Deshpande opposed changing Plaintiff's work hours since he was of the view that the clerical employees in the Division should begin work by 8:00 a.m., and he was already compromising by allowing Plaintiff to come to work at 8:30 a.m. (Id. ¶ 89.) Both Dr. Deshpande and Rice felt that if the F-PIC were removed and Plaintiff were not successful in finding another position, they

---

[6]Plaintiff contends that for one of those days she was late because of a Parent-Teacher's conference. She also contends that the time clocks were fast. (Wiseman Depo. 121-122). Plaintiff admitted that she had been aware of the time clock inaccuracies for "months." (Def. SOF ¶ 115).

7

would have to start over in the progressive disciplinary process regarding Plaintiff's performance. (Id. ¶ 90.) The F-PIC remained in effect after the grievance process and Plaintiff was informed of that by letter dated October 1, 2002 from Pruitt. (Id. ¶ 91 & Rice Aff. Ex. 17.)

On September 24, 2002, Rice sent an e-mail to Plaintiff following up on issues that had been discussed with her on September 12, 2002. (Def. SOF ¶ 94.) Plaintiff was again reminded about tardiness and University policy. (Rice Aff., Ex. 18.) Plaintiff's tasks were prioritized and she was given a timetable for the completion of certain projects. (Id.) Plaintiff responded with an e-mail dated October 3, 2002, taking issue with many of the comments made by Rice and setting forth reasons why some tasks had not been completed. (Id. Ex. 19.)[7]

At least partially in response to the e-mail from Plaintiff, Rice presented Plaintiff with another written letter about her performance on October 11, 2002. (Id. Ex. 20; Def. SOF ¶¶ 99 & 100.) Rice noted that despite the fact (1) Dr. Patel had been out of the office, (2) Plaintiff had been given time away from her desk and the phones, and (3) the deadline had been extended, Plaintiff still had not completed old filing. (Rice Aff. Ex. 20.) Rice informed Plaintiff that because several of the doctors were going to be out of town over the next couple of weeks, she saw no reason

_____

[7]Throughout the entire process, Plaintiff took issue with many of the points raised by Dr. Deshpande and Rice regarding her performance.

why Plaintiff could not have the filing completed by October 17, 2002. (Id.)

On October 14, 2002, Rice sent an e-mail message to Williams, a Human Resource Administrator in Employee Relations, which indicated that Dr. Deshpande wanted to "take action" concerning Plaintiff. Rice attached a copy of the follow-up letter Plaintiff had been given on October 11, 2002.

On October 22, 2002, Rice received an e-mail from Plaintiff which indicated she was going to have to take time off for some outpatient treatments and doctor's appointments beginning on October 24, 2002. The next day, shortly before noon, Plaintiff sent an e-mail to three other clerical employees in the Division, with a copy to Dr. Patel, indicating she was going to take an extended lunch break for "an hour or longer." (Rice Aff. Ex. 4.) Plaintiff did not ask either Dr. Patel or Rice for permission to take an extended lunch. (Rice Aff. ¶ 24.)[8] Later that afternoon, Rice received an e-mail message from a clerical employee in the Division which claimed that Plaintiff had failed to place a meeting on Dr. Patel's calendar. (Rice Aff. Ex. 27.) After seeing that message, Dr. Deshpande contacted Rice and told her he wanted to meet with Plaintiff the following day and that Rice should meet with Williams to prepare a termination letter. (Def. SOF ¶ 127.)

---

[8]Plaintiff states she was taking an extended lunch because it was her birthday and while everybody else's birthday in the Division was celebrated, hers was not. She also contends that taking a long lunch was never a problem, so long as the work was covered and the time was made up at the end of the day. (Wiseman Aff. 8/29/05 ¶ 15).

Case 3:04-cv-00946   Document 48   Filed 11/14/05   Page 9 of 33 PageID #: 595

On October 24, 2002, Rice sent Williams an e-mail advising her she had prepared a termination letter and asking for comments. (Id. ¶ 128.)  Rice also indicated Dr. Deshpande wanted to terminate Plaintiff that same day.  (Id. ¶ 129.)  In the e-mail, Rice indicated Plaintiff was leaving early for "treatments," noted Plaintiff had "been out a lot with doctor's appointments," and asked if Williams had "received any paperwork for her for FMLA for treatment."  (Rice Aff., Ex. 28.)

On October 24, 2002, Dr. Deshpande, Williams, and Rice met with Plaintiff and advised her of her termination.  (Def. SOF ¶ 133.)  The stated reason for the termination was Plaintiff's continued failure to perform her job duties and her attendance issues.  (Id. ¶ 134.)

**B.  Plaintiff's FMLA Leave Requests**

Vanderbilt has a policy for the approval of Family and Medical Leave Act leave which is available to all employees on the University's Human Resources website.  (Def. SOF ¶¶ 143-144.)  Under the policy, certification forms are presented to the University's Occupational Health Clinic.  The Health Clinic's physicians and other healthcare professionals review the certification from the employee's physician to determine whether the medical condition of the employee or family member is a "serious health condition" as defined by the FMLA.  Once it is determined that a "serious health condition" exists, the FMLA medical determination form is forwarded to the Employee Relations Office for review.  (Id.)

10

On July 19, 2002, Rice had a regular meeting with members of the staff in the Division, during which she discussed several things, including the Family and Medical Leave Act. (Def. SOF ¶¶ 51 & 53.) Rice also handed out printed materials describing employees' rights under the FMLA and Vanderbilt's policy for requesting FMLA leave. (Id. ¶ 54.) Plaintiff attended that meeting. (Id. ¶ 52.) Prior to that meeting, Plaintiff had made no request for FMLA leave. However, whenever Plaintiff needed time off for doctor's appointments for her son or herself, Rice granted Plaintiff's request. (Id. ¶ 56.) Nevertheless, Plaintiff claims that she discussed with Rice and Dr. Deshpande at their meeting on March 13, 2002, the need to start work at 9:00 a.m. during the school year due to her son's condition. She also claims she was required to move to another position in the Division because of her son's need for care and Dr. Deshpande's insistence that she start no later than 8:30 a.m. (Wiseman Decl. 8/29/05 ¶ 17.)

Plaintiff sent a letter to Dr. C. Andrew Jordan, her son's physician, on August 27, 2002, requesting that he provide medical information about her son to Vanderbilt. (Id. ¶ 154.) A physician's certification form completed by Dr. Jordan, together with a letter, was sent to the Occupational Health Clinic on August 27, 2002. (Id. ¶ 153.) In that form, Dr. Jordan indicated that Plaintiff's son had been diagnosed with ADD and that the probable duration of the condition was five years or more. (Burns Aff., Ex. 3.) Dr. Jordan noted that "[t]his child is poorly motivated and has poor organizational skills and really needs his

11

mother home to get him ready and off to school." (<u>Id</u>.) He also checked "yes" in the box indicating that the condition would require "assistance for basic medical, hygiene, nutritional needs, safety or transportation." (<u>Id</u>.) In an accompanying letter, Dr. Jordan indicated that (1) Plaintiff's son would require an additional hour of Plaintiff's time in the morning; (2) the son needed to be seen in the office monthly, and (3) the request was being made for the nine-month school year period. (<u>Id</u>.)

The certification form was reviewed by the Occupational Health Clinic which determined that the requested leave associated with Plaintiff's son's ADD met the requirements of a "serious health condition" and a copy of that determination was forwarded to the Employee Relations Office. (Def. SOF ¶¶ 156-157.) When Veronica Burns, Director of Employee Relations, reviewed the form, she determined Plaintiff was not requesting a specific number of days off for leave time, or intermittent leave, but instead was seeking a change in her work schedule. (<u>Id</u>. ¶ 158.) Based on that, she denied the request for a change in Plaintiff's work schedule from 9:00 a.m. to 5:30 p.m., but did approve the request to take time off once a month for her son's doctor's office visits. (<u>Id</u>. & Pf. SOF ¶ 7) Even though Burns had decided to deny the request, an e-mail from Dr. Mary Yarborough, the physician in charge of Vanderbilt's Faculty/Staff Health and Wellness Department, indicated that had Plaintiff requested an hour a day off, instead of a schedule change, the request probably would have been approved. (Pf. SOF ¶ 9, Williams Depo., Ex. 59.) Plaintiff was

12

informed by letter dated September 12, 2002, that her request to change her work hours was denied. (Id. ¶ 8.)

Even though the request was denied, Rice continued to grant Plaintiff excused time off for Plaintiff's own doctor's appointments. (Wiseman Depo. at 91, 94.) In fact, Plaintiff was given excused time off for ultrasound examinations on August 25 and September 11, 2002, and for a doctor's appointment on October 22, 2002. (Def. SOF ¶ 168.)

With respect to Plaintiff's own health condition, the record shows that Plaintiff sent an e-mail to Rice on August 30, 2002, indicating that she had had an ultrasound revealing "that the tumor had somewhat increased in size" but that her doctor did not feel it to be significant at that time in terms of warranting surgery. (Rice Aff., Ex. 11.) Plaintiff also indicated, however, that "there was something discovered which is less than satisfactory" which would require a biopsy which had been scheduled for September 6, 2002. (Id.) Plaintiff also pointed out that she had other tests scheduled for September 11, 2002. (Id.)

On October 22, 2002, Plaintiff reported to Rice that she had been given "test" results which revealed she needed outpatient treatment for visits to the doctor on October 24, 25, 28, 29, and 31, 2002. (Id., Ex. 25.) Plaintiff did not supply certification of a health care provider for FMLA leave relating to these matters and made no other request for FMLA leave for her own medical condition. (Def. SOF ¶ 167 & Wiseman Depo., Ex. 22.)

13

## II. **POST SUMMARY JUDGMENT FILINGS**

After the briefing had been completed on Defendants' Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment, Plaintiff filed a Motion for Leave to File Supplemented Response to Defendants' Statement of Undisputed Material Facts and for Oral Argument (Docket Entry No. 43), along with a Supplemental Memorandum Opposing Defendants' Motion for Summary Judgment and Supporting Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 44). Both filings were made on September 23, 2005, prompting Defendants to file a Motion to Strike the Supplemental Memorandum (Docket Entry No. 46) and an Objection to the Motion for Leave to file a supplemented response to Defendants' Statement of Undisputed Facts, (Docket Entry No. 47) because both filings were untimely.

On December 7, 2004, the Magistrate Judge entered an Initial Case Management Order setting forth assorted deadlines, including deadlines for the filing of dispositive motions and the responses and replies thereto. (Docket Entry Nos. 6 & 7.) Specifically, the Magistrate Judge ordered that any replies to dispositive motions were to be filed on or before September 12, 2005. (<u>Id</u>.) After Defendants filed their Motion for Summary Judgment, the Magistrate Judge entered an Order forwarding the file to this Court and reiterating that any reply was to "be filed no later than September 12, 2005." (Docket Entry No. 23).[9] The Order further

---

[9]After Plaintiff's Motion for Partial Summary Judgment had been docketed, another Order was entered which indicated that

provided: "No other filings in support of or in opposition to any dispositive motion shall be made except with the express permission of the Honorable Robert L. Echols." (Id.)

Rule 16 of the Federal Rules of Civil Procedure provides that dates set forth in a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge[.]" "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002)(quoting Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001)). "Another relevant consideration is possible prejudice to the party opposing the modification." Id.

In this case, Plaintiff has shown no cause for filing a Supplemental Memorandum after the deadline for such filings had long passed, nor has she shown good cause for seeking leave to file a Supplemented Response to Defendants' Statement of Facts. While Plaintiff claims that she is merely seeking to add further citations in support of her prior responses based upon the declaration which she filed on September 12, 2005 (Docket Entry No. 43),[10] she has presented no facts showing why those citations could not have been included with the filings she made on

_____

Plaintiff would have until September 12, 2005, to file any reply to any response Defendants made to her motion. (Docket Entry No. 24).

   [10]Defendants assert that Plaintiff is seeking to present "additional arguments beyond the pleadings provided for in the Case Management Order" and "to provide still more 'explanations'" for her performance problems. (Docket Entry No. 47 at 1-2).

15

September 12, 2005.  Accordingly, Defendants' objections are
sustained and Plaintiff's Motion for Leave to File Supplemented
Response to Defendants' Statement of Undisputed Facts and for Oral
Argument (Docket Entry No. 43)[11] will be denied and Defendants'
Motion to Strike Plaintiff's Supplemental Memorandum (Docket Entry
No. 46) will be granted and the Supplemental Memorandum (Docket
Entry No. 45) will be stricken from the record.

### III.  THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff has moved for partial summary judgment on the issue
of liability.  Defendants have moved for summary judgment on
Plaintiff's claims generally, as well as for summary judgment on
the claims as they relate to the individual Defendants Williams and
Rice.  The Court will address the parties' respective motions under
separate subheadings.  However, because of the nature of the
motions, there is a certain amount of overlap between a particular
party's claim and the opponent's defenses to those claims.  For
this reason, after setting forth the appropriate standard of
review, the Court will focus on the arguments raised by the parties
in relation to Plaintiff's Motion for Partial Summary Judgment,
followed by analysis of the additional arguments raised with
respect to Defendants' Motion for Summary Judgment.

---

[11]As for oral argument, Plaintiff merely states that she
"requests oral argument in order to address any questions that the
Court may have about the facts and the law in this case." (Docket
Entry No. 43 at 2).  This Court sees no need for oral argument and
accordingly that request will be denied.

## A. **Standard of Review**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party,

17

drawing all justifiable inferences in its favor. <u>See</u> <u>Matsushita</u> <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**B.  <u>Plaintiff's Motion For Partial Summary Judgment</u>**

Plaintiff's Motion for Partial Summary Judgment contends that there is no genuine issue as to a material fact concerning Defendants' liability under the FMLA. This Court disagrees.

The FMLA entitles an eligible employee up to twelve weeks of leave during any twelve month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee," or "in order to care for" a child who has a "serious health condition." 29 U.S.C. § 2612(a)(1)(C)&(D). "The term 'serious health condition' condition means an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

The Sixth Circuit "recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." <u>Hoge v. Honda of Am., Inc.</u>, 384 F.3d 238, 244 (6th Cir. 2004).

In this case, Plaintiff seeks to recover under both theories. She contends that Defendants not only interfered with her right to take FMLA leave, but also retaliated against her for seeking such leave.

18

### 1. Interference Claim under the FMLA

"The interference provision of the Act, § 2615(a)(1), creates prescriptive rights" by providing "that 'it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." Id. (quoting 29 U.S.C. § 2615(a)(1)). It is not necessary that Plaintiff was treated any worse than other employees, only that she was denied an entitlement under the Act. Id.[12]

> To prevail on an interference claim, a plaintiff must establish that (1) [s]he is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the Act, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of h[er] intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee benefits to which [s]he was entitled.

Saroli v. Automation Modular Components, Inc., 405 F.3d 446, 454 (6th Cir. 2005). In this case, there is no dispute that Plaintiff was an eligible employee or that Vanderbilt is an employer. There is, however, a material issue of fact as to whether Plaintiff was entitled to leave under the Act and whether Vanderbilt denied her leave to which she was entitled.

Under the Regulations, a request for FMLA leave to care for a family member must be either to provide physical or psychological care:

> The medical certification provision that an employee is "needed to care for" a family member encompasses both physical and psychological care. It includes situations

---

[12]For this reason, "[a]n employer may violate § 2615(a)(1) regardless of the intent of [its] conduct." Id.

> where, for example, because of a serious health
> condition, the family member is unable to care for his or
> her own basic medical, hygienic, or nutritional needs or
> safety, or is unable to transport himself or herself to
> the doctor, etc. The term also includes providing
> psychological comfort and reassurance which would be
> beneficial to a child, spouse or parent with a serious
> health condition who is receiving inpatient or home care.

29 C.F.R. § 825.116(a). It is an open question whether physical or

psychological care was needed for Plaintiff's son.

Dr. Jordan's certification which was provided to Vanderbilt

described the "regiment of treatment to be prescribed" as follows:

"this child is poorly motivated and has poor organizational skills

and really needs his mother home to get him ready and off to

school." (Burns Aff., Ex. 3.) He also checked the box indicating

that the son would require assistance for "basic medical, hygiene,

nutritional needs, safety or transportation." (_Id_.)[13] In an

accompanying letter, Dr. Jordan merely indicated that Plaintiff's

son would require "an additional hour of her time in the morning."

(_Id_.)[14]

---

[13]Another question on the certification form asks whether the
employee's presence was necessary or would be beneficial for the
care of the patient, including psychological comfort. The
photocopies before the Court (Wiseman Depo., Ex. 13 & Burns Aff.,
Ex. 3) are unclear as to whether Dr. Jordan checked the "yes" box
since a mark runs down the entire page where the box appears. It
does appear, however, that the "no" box was unchecked. Even
assuming that Dr. Jordan responded in the affirmative to this
question, that does not change this Court's conclusion that an
issue of fact exists as to whether Plaintiff needed the additional
hour in the morning to care for her son's physical or psychological
needs.

[14]In this regard, Plaintiff claims in her declaration that in
the meeting with Dr. Desphande and Rice on March 13, 2002, she
discussed with them the need to start at 9:00 a.m. during the

The information provided to Vanderbilt does not make it clear that Plaintiff was needed to care for her son's physical or psychological needs. Instead, the information provided can be read as suggesting the need for Plaintiff to undertake a care-taking role in assuring that her son got on the bus because her son had "poor organizational skills." Moreover, the request could be read as a request for a schedule change which is not provided for in the FMLA, as opposed to a request for a reduced schedule or intermittent leave which is provided for under the Act. See 29 U.S.C. § 2612(b)(discussing intermittent and reduced scheduled leaves).

As for Plaintiff's own condition, there is a disputed material fact as to whether she was suffering from a serious health condition such as to warrant FMLA leave. Plaintiff claims that her "condition was clearly a 'serious health condition' under the FMLA" in that "[s]he was to receive multiple treatments for trigonitis and stress incontinence, conditions that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment." (Docket Entry No. 18 at 14).

Because Plaintiff indicated a need for time off to see a physician, she points to the following Regulation as support for

---

school year because of her son's need for care. (Wiseman Decl. 8/29/05 ¶ 17). In her Affidavit, Rice avers that Plaintiff never made any request to her for reduced hours or time off for either her son's or her own medical condition. (Rice Aff. ¶ 15). Dr. Desphande avers that Plaintiff never discussed with him a request for FMLA leave. (Deshpande Aff. ¶ 12).

21

her claims that she was entitled to FMLA leave for a "serious health condition":

> Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider . . . for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

29 C.F.R. § 825.114(a)(2)(v).

This Regulation, however, does not establish that Plaintiff had a "serious health condition" as required by the FMLA such that Vanderbilt should have allowed her leave. Plaintiff only informed Vanderbilt that she would have "out-patient treatments" for an unspecified illness beginning on October 24, 2002. Plaintiff submitted nothing which would suggest that those treatments were interrelated or were needed to diagnose a condition that would likely result in incapacity for three or more days. A factual issue exists as to whether Plaintiff was entitled to leave under the FMLA and therefore summary judgment is inappropriate.[15]

---

[15]In opposition to Plaintiff's motion for summary judgment on her retaliation claim, Defendants assert that Vanderbilt's FMLA policy clearly requires that employees must submit a physician certification to support any request for FMLA leave." (Docket Entry No. 27 at 6.) While that may be true, it is not decisive on the issue of whether Plaintiff complied with the requirements of the FMLA. "[E]mployers cannot deny FMLA leave on grounds that an employee failed to comply with internal procedures – as long as 'the employee gives timely verbal or other notice.'" Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 722 (6th Cir. 2003)(quoting 29 C.F.R. § 825.302(d)).

## 2. Plaintiff's Retaliation Claim

Under the Regulations, "[a]n employer is prohibited from discriminating against employees . . . who have used FMLA leave" and "cannot use the taking of FMLA leave as a negative factor in employment actions[.]" 29 C.F.R. § 824.220(c). "This prohibition includes retaliatory discharge for taking leave." Arban v. West Publ'g Co., 345 F.3d 390, 403 (6th Cir. 2003).

In Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 315 (6th Cir. 2001), the Sixth Court indicated that a court should apply the McDonnell Douglas burden-shifting framework to FMLA retaliation claims that are based upon indirect evidence. Under that framework, the Plaintiff must first establish a *prima facie* case, with the burden then shifting to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. Gibson v. City of Louisville, 336 F.3d 511, 513 (6th Cir. 2003). If the employer articulates such a reason, the "Plaintiff must show that this nondiscriminatory reason was in fact pretextual and that unlawful discrimination was the real reason for the adverse action." Id. "To survive summary judgment, [Plaintiff] must provide sufficient evidence to show that the exercise of her FMLA rights was a motivating factor in her discharge." Heady v. U.S. Enrichment Corp., 2005 WL 1950793 (6th Cir. 2005).

To establish a *prima facie* case, it is incumbent upon Plaintiff to show (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the protected

23

activity and the adverse employment action. Id. Sixth Circuit precedent provides that "[t]he burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

Given that the burden is not onerous, this Court finds that Plaintiff has presented sufficient evidence to establish a *prima facie* case. There is no question but that Plaintiff suffered an adverse employment action since she was terminated. As for engaging in statutorily protected activity, this Court has already noted that a jury question exists as to whether Plaintiff was entitled to take FMLA leave and whether the taking of that leave would constitute statutorily protected activity.

The primary area of contention in this case is the question of a causal connection between Plaintiff's termination and her request for FMLA leave. The Court concludes that this too is a jury question given the material issues of fact which presently exist in the record, as is the question of whether the reasons given by Vanderbilt for the termination were pretextual.

Vanderbilt has built a strong case suggesting that Plaintiff was not performing up to task. Even prior to any suggestion that Plaintiff needed FMLA leave for either herself or her son, Vanderbilt documented numerous instances of Plaintiff's failure to live up to her employer's legitimate expectations. These deficiencies included tardiness, failure to complete filing for a significant period, and failure to promptly and accurately maintain calendars. Yet, an integral part of Plaintiff's termination had to

24

do with her inability or unwillingness to report for work on time. A jury question exists as to whether Plaintiff was entitled to FMLA protection for coming in late because of the psychological or physical needs of her son.[16]  This is particularly so since her termination came on the heels of indicating a need to come in late to care for her son (and arguably the need for FMLA leave for herself).  Compare, Spurlock v. Peterbilt, Inc., 58 Fed. Appx. 630 (2001)("there is simply no evidence upon which a jury could find for [Plaintiff]" because "[h]is FMLA leave took place several years before his discharge, and there is no indication that [Defendant] balked at honoring its FMLA obligations").

C. **Defendants' Motion for Summary Judgment**

    1. *Plaintiff's Interference Claim*

With respect to Plaintiff's interference claim under 29 U.S.C. § 2615(a)(1), Defendants concede that Vanderbilt is a covered employer for purposes of the FMLA and that Plaintiff was a covered employee under the FMLA in 2002.  (Docket Entry No. 12 at 20-21.) Defendants assert, however, that Plaintiff cannot make out a *prima facie* case of interference in violation of the FMLA because

---

[16]The Court recognizes Defendants' argument that many of the days Plaintiff was tardy were days which would not have been school days and thus would not require Plaintiff to be home to help her son off to school.  The Court also recognizes that the excuses Plaintiff did provide for being late on the days when her son was back in school did not reference the need to be home to care for him, but instead included excuses such as being tied up in traffic or having to attend a Parent-Teacher's conference.  However, if Plaintiff were otherwise entitled to FMLA leave, she would not have had to provide such excuses in the first place and the Court cannot conclude, as a matter of law, that but for the otherwise unexcused tardies she would have been terminated.

25

Plaintiff cannot show she requested a reduced leave schedule and cannot show the requested schedule change was to provide care within the meaning of the FMLA for her son.

Turning first to the latter, Defendant claims that the certification from Dr. Jordan "made it clear that the requested change in schedule was to permit the Plaintiff to ensure that her son made it to the school bus each morning during the school year," that the "schedule change was because of [the son's] 'poor motivational and poor organizational skills," and "were clearly not to provide physical or psychological care." (Docket Entry No. 12 at 21-22.) Defendants argue that Plaintiff's claim for leave to assist her son was "not to provide either 'physical' or 'psychological' care for her son" but rather "was more akin to 'childcare' or 'babysitting.'" (Id. at 24.)

Defendants may be reading the certification too narrowly. Not only did Dr. Jordan reference the "poor motivational and organizational skills" of Plaintiff's son, he also checked the box indicating that Plaintiff's son required "assistance for basic medical, hygiene, nutritional needs, safety, or transportation," and may also have checked the box indicating that Plaintiff's presence may have been beneficial for the "psychological comfort" of her son.[17]

Under 29 C.F.R. § 825.305(d), "[t]he employer shall advise an employee whenever the employer finds a certification incomplete,

_____

[17]See footnote 13, infra.

26

and provide the employee a reasonable opportunity to cure any such deficiencies." The Sixth Circuit recently noted in Sorrell v. Rinker Material Corp., 395 F.3d 332, 338 (6th Cir. 2005) that it was unclear from the record before it on appeal whether the employer in that case viewed the medical certification as "'incomplete' so as to trigger its duty under 29 C.F.R. § 825.305(d)." The Sixth Circuit then cited Shtab v. Great Bay Hotel & Casino, Inc., 173 F.Supp.2d 255, 265 (D.N.J. 2001) which held that "the predicate question of whether the missing dates in [an employee's] medical certification rendered his application complete but unsupportive of [his] leave request or incomplete and capable of correction is a question of material fact for the jury to decide." Likewise in this case, to the extent Defendants may have viewed the certification provided by Dr. Jordan as being "incomplete," they were under a duty to so inform Plaintiff. Whether that was in fact Defendants' belief, however, is a question for the jury.

With regard to the request for leave which was made, Defendant argues that Plaintiff was seeking a reduced schedule and not intermittent leave. Because of that, she was not entitled to FMLA leave.

It is true that the form from Plaintiff's son's doctor requested that her hours be changed from 8:30 a.m. to 5:00 p.m. to 9:00 a.m. to 5:30 p.m. It is also true that as a legal matter, a request for a schedule change is not provided for in the FMLA while requests for intermittent leave or reduced hours are provided for in the FMLA. In the Court's view, a genuine issue of material fact

27

exists as to whether Plaintiff was merely seeking to have her schedule moved back one-half hour and Defendants strictly viewed it as such, or whether she was seeking intermittent leave or reduced hours leave.

A jury could very well find that Defendant understood Plaintiff to be seeking leave covered by the FMLA. Dr. Jordan's certification, while referencing a change in Plaintiff's hours, also made clear that the leave was so that Plaintiff could be with her son in the morning and this should have suggested that a reduced schedule leave may have been appropriate. In fact, Dr. Yarborough, the physician in charge of Vanderbilt's Health and Wellness Department, indicated that, had the request merely been written differently and specifically requested an hour off each day, it probably would have been granted. Moreover, as has already been noted, whether the leave request was complete but unsupportive of leave, or incomplete and capable of correction, is a jury question.

### 2. *Plaintiff's Retaliation Claim*

With regard to Plaintiff's retaliation claim, this Court has already noted that the burden of establish a *prima facie* case is not onerous and that sufficient evidence has been presented such that summary judgment is not warranted. In their Memorandum in support of their Motion for Summary Judgment, Defendants focus on the contention that they have advanced a legitimate non-discriminatory reason for Plaintiff's discharge - poor performance - which Plaintiff cannot show to be pretextual.

28

"A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Dew v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000). While Defendants have presented evidence to establish that Plaintiff's poor work performance had a basis in fact and that this basis was otherwise sufficient to warrant her dismissal, a jury question exists as to whether that proffered reason actually motivated Defendants' conduct.

Among the deficiencies repeatedly noted by the Defendant relating to Plaintiff's performance was her inability to arrive at work at the scheduled time. A jury could certainly find that some of those tardies, which otherwise may have been properly covered by the FMLA, were a factor in her termination.

Moreover, the time line of events just prior to Plaintiff's termination presents a jury question as to the validity of Defendants' stated reason for her termination. On August 23, 2002, it was noted[18] that Plaintiff's W-PIC was to expire the beginning of September 2002, and that the only deficiency of Plaintiff which had improved was her tardiness. Plaintiff then submitted certification regarding her son's condition on August 27, 2002. Shortly thereafter, on September 5, 2002, Rice drafted a final F-PIC which indicated that "[w]hile your tardiness had improved,

_____

[18]It is unclear who authored the handwritten document which was Exhibit 47 to Rice's deposition.

immediately following your PIC dated June 7, 2002, there are now ten instances of tardiness from July 24, 2002 through September 6, 2002." (Rice Depo. Ex. 50.)

Plaintiff's version of events is that she first broached the need to start later because of her son's ADD during her meeting with Dr. Deshpande and Rice on March 13, 2002. A jury could determine that the confirmation of such a need in the form of a certification from Dr. Jordan, followed by an F-PIC relaying tardiness issues which had been noted as being improved prior to the certification, was a factor in Vanderbilt's decision to terminate Plaintiff. See Taylor v. Invacare Corp., 64 Fed.Appx. 516, 521 (6th Cir. 2003)(employer may not count an FMLA covered leave day as an occurrence under their policy and then claim that it was not that absence but the "totality of the circumstances" that led to the firing).

### 3. *Individual Defendants' Motion for Summary Judgment*

Defendants recognize that "the majority of courts that have ruled on the issue have held that there is individual liability under FMLA."[19] (Docket Entry No. 27 at 12). Nevertheless, the Individual Defendants assert they cannot be held liable under the FMLA because neither Rice nor Williams made the decision to deny

---

[19]The Sixth Circuit appears not to have directly addressed the issue. In Mitchell v. Chapman, 343 F.3d 811 (6th Cir. 2003), the Sixth Circuit concluded public employees were not subject to liability under the FMLA because of the framework of the statute. Mitchell is not controlling and the Sixth Circuit made clear that the "narrow issue before this Court is whether the FMLA imposes individual liability on *public agency* employees." Id. at 828 (italics in original).

30

Plaintiff's FMLA leave request, nor did either make the decision to terminate Plaintiff. (Id.)

Under the FMLA, the definition of "employer" includes "any person who acts, directly or indirectly, in the interest of an employer" to any of the employer's employees. 29 U.S.C. § 2611(4)(A)(ii)(I). Such language has led courts to conclude that "the test for liability is whether the defendant had the ability to control, in whole or in part, whether the plaintiff could take a leave of absence and return to the position." Oby v. Baton Rouge Marriott, 329 F.Supp.2d 772, 788 (M.D. La. 2004); accord, Johnson v. A.P. Products, Ltd., 934 F.Supp. 625, 629 (S.D.N.Y. 1996); Freemon v. Foley, 911 F.Supp. 326, 331 (N.D. Ill. 1995).

Given the broad remedial purposes of the FMLA, and its plain language that an employer includes a person who acts directly or indirectly in the interest of the employer, this Court finds that a jury question exists as to the individual liability of both Rice and Williams. Rice was Plaintiff's supervisor and a jury could readily find that she was intimately involved in the events which led to Plaintiff's termination since Rice repeatedly counseled Plaintiff about performance issues and attended meetings with Plaintiff and Dr. Deshpande where performance was discussed.

As for Williams, she herself admits she began discussing Plaintiff's performance issues with Rice in the spring of 2002; she assisted Rice in drafting the PIC letter in May 2002; she spoke with Rice about Plaintiff's performance problems both immediately before and immediately after Plaintiff submitted the certification

31

request for her son's ADD; she assisted in preparing the notification that the request for a schedule change was denied; she assisted in drafting the F-PIC ; she had several conversations with Rice after the F-PIC was issued concerning Plaintiff's performance; she and Burns jointly concluded the FMLA did not provide for a schedule change; and she was involved in the decision to terminate Plaintiff, albeit only in an "advisory capacity." (Williams Aff. ¶¶ 4-6, 9-10, 12-14 & 16-18.) Again, based upon such facts, a jury could determine that Williams is individually liable under the FMLA.

## IV. CONCLUSION

Genuine issues of material fact exist as to why Plaintiff was fired from her employment at the time the termination decision was made. On the one hand, a jury could view Plaintiff's termination as merely the culmination of Plaintiff's repeated failure to live up to Vanderbilt's expectations. On the other hand, a jury, even accepting some performance problems, could conclude that Plaintiff's termination occurred not only because of such problems, but also because Plaintiff was requesting FMLA leave for herself or to care for her son. Such possible scenarios make summary judgment inappropriate. Accordingly, Defendants' Motion for Summary Judgment (Docket Entry No. 11) and Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 18) will be denied.

Additionally, Plaintiff's Motion for Leave to File a Supplemented Response to Defendant's Statement of Undisputed Facts and for Oral Argument (Docket Entry No. 43) will be denied and

32

Defendants' Objection thereto (Docket Entry 47) will be sustained. Finally, Defendants' Motion to Strike Plaintiff's Supplemental Memorandum Opposing Defendants' Motion for Summary Judgment and Supporting Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 46) will be granted and Plaintiff's Supplemental Memorandum (Docket Entry No. 45) will be stricken.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE